CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for New York Commercial Bank

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:                                                          Chapter 11

Medford Development Corp.                        Case No. 14-75666 (AST)
Motor Parkway Enterprises Inc.                  Case No. 14-75667 (AST)
Airport Development Corp.                          Case No. 14-75683 (AST)
Wheeler Development LLC                          Case No. 14-75668 (AST)
Smithtown Development Corp.                     Case No. 14-75669 (AST)
Brentwood Development Corp.                     Case No. 14-75670 (AST)
Holbrook Development Corp.                       Case No. 14-75671 (AST)
Carman Development Corp.                         Case No. 14-75672 (AST)
Maple Avenue Hauppauge Dev. Corp.        Case No. 14-75674 (AST)
Port Jefferson Development Corp.               Case No. 14-75675 (AST)
Ronkonkoma Development Corp.                 Case No. 14-75676 (AST)
Islandia Development Corp.                         Case No. 14-75677 (AST)
Oceanside Enterprises Inc.                          Case No. 14-75678 (AST)
Islip Development Corp.                              Case No. 14-75679 (AST)
Westbury Enterprises Inc.                           Case No. 14-75680 (AST)

                                                                 (Jointly Administered)

-----------------------------------------------------------X

**MOTION TO PROHIBIT DEBTORS'**
**USE OF CASH COLLATERAL OR, ALTERNATIVELY,**
**GRANTING ADEQUATE PROTECTION, AND FOR ENTRY**
**OF ORDER SCHEDULING EMERGENCY HEARING**

TO THE HONORABLE ALAN S. TRUST, UNITED STATES BANKRUPTCY JUDGE:

New York Commercial Bank ("NYCX"), by and through its counsel Cullen and Dykman

LLP, as and for its motion to prohibit the Debtors' use of cash collateral or, alternatively,

granting adequate protection, and for entry of an order scheduling an emergency, hearing respectfully represents as follows:

## INTRODUCTION

1.      On December 24, 2014 (the "Petition Date"), all of the above-captioned Debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of New York.

2.      No trustee or examiner has been appointed in the Debtors' cases and the Debtors remain in possession of their property and in operation of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      By order dated January 9, 2015, the Debtors' cases have been procedurally consolidated.

4.      All of the Debtors operate gas stations, some or all of which include convenient stores and/or repair shops (the "Stations") at locations leased or owned by them.

## BACKGROUND

5.      On December 4, 2013, Steve Keshtgar ("Keshtgar"), principal of all of the Debtors, executed two notes in favor of NYCX--a Modified and Extended Secured Promissory Note in the original principal amount of $1,350,000 (the "1,350,000 Note"), and a Modified and Extended Secured Promissory Note in the original principal amount of $50,000 (the "$50,000 Note").

6.      On December 4, 2013, Marketing Inc. of Islandia ("Marketing"), an entity in which Keshtgar is also the principal, executed four notes in favor of NYCX--a Modified and Extended Secured Promissory Note in the original principal amount of $1,800,000 (the

"$1,800,000 Note"), a Further Extended Revolving Credit Note in the original principal amount of $300,000 (the "300,000 Note"), a Secured Revolving Credit Note in the original principal amount of $750,000 (the "750,000 Note") and a Secured Promissory Note in the original principal amount of $1,725,000 (the "1,725,000 Note"; together with the $1,350,000 Note, $50,000 Note, $1,800,000 Note, $300,000 Note and $750,000 Note, the "Notes"). Copies of the Notes are annexed as Exhibit "A" hereto.

7.      The amounts due under the $1,725,000 Note and $750,000 Note were guaranteed by a Guaranty of Payment and Performance dated December 4, 2013 executed by, among other parties, all of the Debtors in favor of NYCX (the "2013 Guaranty"). The obligations under all Notes other than the $750,000 Note were guaranteed by a Reaffirmation dated December 4, 2013 of that certain Guaranty of Payment and Performance executed in favor of NYCX on September 1, 2012 by, among other parties, all Debtors (the "2012 Guaranty"; together with the 2013 Guaranty, the "Guaranties"). Copies of the 2013 Guaranty and the Reaffirmation of the 2012 Guaranty are annexed as Exhibit "B" hereto.

8.      The obligations under all of the Notes were secured by the collateral described in Security Agreements executed March 30, 2007, March 28, 2008, October 28, 2009, September 30, 2010, July 17, 2012, September 1, 2012 and June 1, 2013 by, among other parties, all of the Debtors, and reaffirmed by Reaffirmation Agreement dated December 4, 2013 (the "Security Agreements"). Copies of the Security Agreements and the Reaffirmation are annexed as Exhibit "C" hereto.[1]

9.      By virtue of the Security Agreements and UCC Financing Statements filed in connection with same, NYCX has a blanket security interest in all assets owned by the Debtors

---

[1] At the time the original Security Agreements were entered into, Holbrook Development Corp. was known as Hicksville Development Corp.

and the proceeds thereof.  Thus, the Debtors' cash, inventory, equipment, gasoline, convenience store products and all other assets, and the proceeds thereof, constitute NYCX's "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

10.     Keshtgar and Marketing defaulted under all of the Notes by failing to pay the Notes when they matured on July 1, 2014.

11.     As of the Petition Date, NYCX was owed the amount of $7,356,478.44 pursuant to the Notes.

**UNAUTHORIZED USE OF CASH COLLATERAL**

12.     Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtors "may not use, sell, or lease cash collateral under [section 363] unless each entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]."  See, 11 U.S.C. §363(c)(2).

13.     "The debtor's complete respect for secured property rights is commanded by the Bankruptcy Code.  Section 363(c) requires either creditor consent or prior court approval to use cash collateral, and in the well-managed chapter 11 case the 'motion to use cash collateral' is the very first pleading to be filed by the highly-leveraged debtor."  In re Alvey, 56 B.R. 170, 172-3 (Bankr. W.D. Ky. 1985).

14.     By letter dated December 29, 2014, counsel for all Debtors was advised of NYCX's interest in the cash collateral and that NYCX did not consent to the use of its cash collateral by any of the Debtors entities.  See, Exhibit "D" hereto.  The letter further requested that the Debtors immediately cease using cash collateral and segregate same to be paid to NYCX in reduction of the Debtors' obligations to NYCX.  In response, counsel to NYCX was initially advised that the Debtors were not selling any gasoline and that the proceeds of any sales from the

convenience stores were being "segregated". NYCX was later advised that five Stations are selling gas and some have open convenient stores[2].

15.    In that same communication, the Debtors took the position that the gasoline sales do not constitute NYCX's cash collateral. Upon information and belief, the Debtors are taking that position because the gasoline for certain Stations was purchased by monies loaned by Kehstgar's brother ("Frank") in exchange for a purchase money security interest in the purchased gasoline. Even assuming that Frank has a valid purchase money security interest (which as set forth below is not absolute), it only pertains to gas sold at three of the Debtor's Stations (Holbrook Development Corp., Motor Parkway Enterprises and Carman Development Corp.). However, as set forth in the Affidavit of Alissa Piccione annexed as Exhibit "E" hereto, Stations operated by at least two (2) other Debtors, Port Jefferson Development Corp. and Maple Avenue Hauppauge Development Corp., are also selling gasoline. Thus, contrary to the Debtor's contentions, at least some of the gasoline being sold by the Debtors constitutes NYCX's cash collateral.

16.    Moreover, it is unclear as to whether Frank's purchase money security interest was perfected since NYCX has thus far been unable to ascertain the date of delivery of the gasoline to the three Stations in questions. If the gasoline was not delivered until after the Petition Date, the purchase money security interest is invalid. Further, even if Frank's purchase money security interest was properly perfected, it is the understanding of NYCX that the gasoline tanks at the Stations are never truly emptied. Thus, any gas purchased with the proceeds with the alleged loan by Frank was comingled with NYCX's collateral and cannot be traced by the Debtors in order to prove whose collateral they are in fact selling.

---

[2] There are several related Stations which did not file bankruptcy. It is unclear whether the five Stations are all Debtor entities.

17.    In addition to the gasoline purchased by funds loaned by Frank, the Debtors have also acknowledged that Sunoco has been providing gasoline on credit to the Debtor for one Station (that operated by Maple Avenue Hauppauge Development Corp., which is selling gas) and that Sunoco is being paid in the "regular course of business". Sunoco's gasoline clearly represents NYCX's collateral.

18.    It is therefore clear that the Debtors are selling NYCX's collateral-both dry goods and gasoline. The question remains as to whether they are disbursing the proceeds of the collateral sales. The employees at the various Stations must be paid wages for their services (although the Debtors are now claiming that they will be firing their employees, who have not been paid), taxes must be paid, utilities must be paid in order to operate the Stations and ordinary operating expenses must be paid. The Debtors have admitted to payments being made to Sunoco in the "regular course of business". There has been no explanation offered by the Debtors as to how such payments are being made, if not with NYCX's cash collateral, for which the Debtor has not filed in the requisite motion.    Accordingly, NYCX believes that the Debtors are using cash collateral in violation of Section 363(c)(2) of the Bankruptcy Code.

19.    Finally, no adequate protection payments or other form of adequate protection has been provided to NYCX (or even offered to NYCX) by the Debtors.

**THE DEBTORS SHOULD BE**
**PROHIBITED FROM USING CASH COLLATERAL**

20.    It has always been NYCX's desire, as communicated to the Debtors, that the Debtors' leases, property and assets be sold in an orderly fashion through these bankruptcy cases. However, until that happens, the Court should issue an order under section 105(a) of the Bankruptcy Code prohibiting the Debtors from using NYCX's cash collateral absent NYCX's consent or order of the Court, and until the Debtors can demonstrate the viability of Frank's

security interest and trace the gasoline sold in the Stations in which NYCX's collateral was commingled with Frank's collateral (if his security interest is valid).  Section 105(a) permits the Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.  See, 11 U.S.C. § 105(a).  Without such an order of the Court, it seems likely that the Debtors will not comply with their obligations under section 363(c) on their own fruition (as they have already admitted to).  Accordingly, NYCX believes that such an order is necessary to carry out the provisions of section 363(c) of the Bankruptcy Code.

**AN ACCOUNTING SHOULD BE IMMEDIATELY PROVIDED**

21.    The Debtors should also be compelled to immediately provide an accounting of all monies received and expended since the Petition Date.  As such funds constitute NYCX's collateral, NYCX, as well as the Court and the United States Trustee, have the right to such information.

**ALTERNATIVELY, NYCX SHOULD BE**
**GRANTED ADEQUATE PROTECTION**

22.    If the Court is not inclined to prohibit the use of cash collateral, NYCX should be granted adequate protection of its security interest in its collateral.  Although the term "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides examples of what might constitute such adequate protection, including periodic cash payments to the extent necessary to compensate for any decrease in the value of NYCX's interest in its collateral, granting additional replacements liens to NYCX or granting NYCX "the indubitable equivalent" of its interest in the collateral.

23.    Since the Debtors have no other assets in which to grant NYCX a replacement lien (as NYCX has an interest in all assets as it is), NYCX submits that the Debtors should be

7

directed to make adequate protection payments to NYCX in order to compensate NYCX for the diminution in the value of its collateral.

**REQUEST FOR ENTRY OF ORDER**
**SCHEDULING EMERGENCY HEARING**

24.     Because the Debtors appear to be dissipating at least some of NYCX's collateral without Court order or NYCX's consent and in violation of the Bankruptcy Code, NYCX believes that is it imperative that the Court address this Motion at its earliest convenience.  As set forth in the Local Rule 9077-1 Affirmation submitted in connection with this request for an expedited hearing, the next available hearing on the Court's calendar for chapter 11 motions at this time is March 4, 2015.  Allowing the Debtors to improperly use NYCX's collateral for a period of nearly two months may result in complete dissipation of NYCX's collateral and will severely prejudice NYCX and its ability to ultimately pursue its rights and remedies.

25.     Accordingly, NYCX requests that the Court enter the order for emergency hearing on this Motion submitted simultaneously herewith.

**CONCLUSION**

26.     Based on the foregoing, NYCX respectfully submits that grounds exist to prohibit the Debtors' use of cash collateral and to compel the Debtors to immediately account for all monies received and disbursed by them since the Petition Date.  Alternatively, NYCX is entitled to adequate protection of its security interests in its collateral.

27.     No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, NYCX respectfully requests that the Court grant the relief sought herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       January 12, 2015

                              CULLEN AND DYKMAN LLP
                              Attorneys for New York Commercial Bank


                         By:  /s/ Bonnie L. Pollack
                              Matthew G. Roseman, Esq.
                              Bonnie L. Pollack, Esq.
                              100 Quentin Roosevelt Blvd.
                              Garden City, New York 11530
                              516-357-3700