# EXHIBIT A

Part 1

## AGREEMENT OF PURCHASE AND SALE

**AGREEMENT** made this ⟨2nd⟩ day of January 2015, by and between **ISLANDIA DEVELOPMENT**, (hereinafter referred to as ASELLER'), a New York corporation having its principal place of business at 1395 Veterans Memorial Hwy, Islandia, NY 11788, an individual residing at **HARVINDER SINGH**, or a corporate entity to be formed of which he is a principal (hereinafter referred to as APURCHASER@).

**WHEREAS**, the Seller owns and operates a "Gulf/Mobil" branded retail gasoline station and convenience store business (the "Business") located at 1395 Veterans Memorial Hwy, Islandia, NY 11788 (APremises@), pursuant to a PMPA Motor Fuels Franchise Agreement (hereinafter referred to as the "Franchise") with Cumberland. (hereinafter referred to as "Cumberland") and

**WHEREAS**, Seller wishes to sell the assets of the Business to Purchaser, and Purchaser desires to acquire said Business, including all of the assets of the Business owned by Seller, on the terms and conditions hereinafter contained.

**WHEREAS,** the parties desire to reduce their terms, conditions and provisions to writing.

**NOW, THEREFORE**, in consideration of the covenants and agreements hereafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the parties hereto agree as follows:

1.     **PURCHASE AND SALE:** The Seller hereby agrees to sell, transfer and deliver to Purchaser and the Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the assets of the Business, including Seller's Franchise rights, the security deposit, all leasehold improvements, equipment, trade fixtures, and other chattels and personal property, including inventory at the Premises, as more fully set forth in Schedule "A" annexed hereto, as well as the Franchise, trade name, goodwill, telephone number(s) and licenses (beer, cigarettes, lottery)(the "Licenses") to the extent they shall be transferable, of the Business (the "Assets"). At Closing, hereinafter defined, the Assets shall be delivered by Seller to Purchaser free and clear of any debts, mortgages, security interests or other liens or encumbrances.

2.     **PURCHASE PRICE:** As and for consideration for the sale of the Business, Purchaser agrees to pay to Seller the sum of **$450,000** Dollars (the Purchase Price"), as follows:

1

A. *$10,000* ~~$2,000,~~ upon the execution of this Agreement, payable to the order of Seller's attorneys, as Escrow Agent, to be held by Escrow Agent pursuant to the terms of this Agreement ("Down Payment"); and

B. *$440,000* ~~$448,000~~, at Closing, by certified or bank check, payable to Seller.

3. **ESCROWEE.** The Down payment made hereunder shall be payable to and held by DiCrescio & Trivedi, LLP, ("Escrowee") as attorney for the Seller, in escrow in a bank account at TD Bank in New York until Closing or sooner termination for this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph.

4. **INVENTORY:**    The Purchase Price does not include inventory

5. **CONDITIONS OF CLOSING:** This transaction is specifically made subject to the following condition(s):

   1. Cumberland's written consent of this transaction and accepting the Purchaser as a Franchise Dealer for 1395 Veterans Memorial Hwy, Islandia, NY 11788

   2. Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a simultaneous execution of a new three (3) year Franchise Agreement or an assignment of the existing Franchise Agreement between Cumberland and the Purchaser for 1395 Veterans Memorial Hwy, Islandia, NY 11788.

6. **CONDITION OF EQUIPMENT:** The Seller makes no representations as to the condition of the trade fixtures and equipment and the Purchaser acknowledges that the fixtures and equipment are being sold in their "as is" condition, except that they will be in working order at the time of the Closing.

7. **LIENS AGAINST CHATTELS:**    If any lien or encumbrance upon equipment should exist, then the Seller shall satisfy such lien or encumbrances prior to the Closing. If the Seller shall have failed to obtain a satisfaction thereof before the date of Closing, then at the Closing, the Seller shall deposit with his attorney a sum sufficient to assure the payment and satisfaction thereof. The existence of any liens or encumbrances against the equipment contracted to be sold hereby shall not be deemed an objection to the title, as long as they are satisfied or sufficient money shall be held at Closing to satisfy and remove such liens or encumbrances, to the satisfaction of Purchaser's attorney.

2

8.    **SELLER'S REPRESENTATIONS:**    Seller and its principals represent and warrant the following:

a.    The Seller is a New York corporation duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller. Seller shall provide a Resolution to that effect executed by all the shareholders of the Corporation at Closing.

b.    That during the period from the date of this Agreement to the Closing, the Seller shall continue to operate the Business in its present manner and employees will not willfully commit any act, or in any way assist others to commit any act, for the purpose of injuring the Business and without limiting the generality of the foregoing, that they will not divulge any confidential information or make available to others any documents, customers lists or other papers from the Premises, or obtain any loans.

9.    **PURCHASER'S REPRESENTATIONS:** The Purchaser represents and warrants the following:

a.    Purchaser is under no legal disability and knows of no reason prohibiting or preventing them from entering into this transaction and closing the same.

b.    To the best of Purchaser's knowledge, Purchaser has a good credit rating for the purpose of applying to and obtaining consent of Cumberland Farm to obtaining a new Franchise Dealer Agreement of the Premises.

10.    **NO OTHER REPRESENTATIONS:**    Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement. Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or the business or this agreement furnished by any broker, agent or other person, unless

3

specifically set forth in this Agreement. Purchaser has inspected the Assets, Purchaser agrees to take the Assets "As Is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the date of the execution of this Agreement and the Closing, except that all equipment and trade fixtures shall be in good working order at Closing.

11.    **CLOSING DATE:**    Closing shall take place on or about *60 Days*, or within five (5) days of the satisfaction of all of the conditions of Closing set forth in this Agreement have been satisfied. The closing shall take place at the office of the Seller's attorney or Purchaser's attorney or any other convenient place agreed upon by the parties.

12.    **LIQUIDATED DAMAGES:** In the event of any default of the terms and conditions of this Agreement by either party, the defaulting party will have ten (10) days to cure said default upon written notice thereof. If Purchaser shall fail to cure said default, this Agreement shall be terminated and the Escrow Agent shall pay and deliver all escrow funds to Seller as liquidated damages, it being agreed that Seller's actual damages may be impossible to ascertain and that the escrow deposit constitutes a fair and reasonable amount of damages under the circumstances and not a penalty. If Seller shall fail to cure said default, Seller's liability is limited to the contract deposit, plus actual cost and expenses incurred by the Purchaser, in addition to Purchaser seeking specific performance.

13.    **SURVIVAL:** None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the Closing. Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every agreement and obligation on the part of Seller hereunder, except those expressly are stated herein to survive the Closing.

14.    **ENTIRE UNDERSTANDING:**    This Agreement, including the attached Schedules sets forth the entire agreement and understanding of the parties in respect to the subject matter hereof and supersedes all prior agreements, arrangements and undertakings relating to the subject matter hereof.

15.    **BROKER:**    The Seller and Purchaser acknowledge that there are no broker involved in bringing about this transaction and each party shall indemnify the other party against any claims of brokers related hereto. Seller shall be responsible for paying a broker commission, pursuant to a separate agreement.

4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed the date and year set forth above.

SELLER:                                                 PURCHASER:

ISLANDIA DEVELOPMENT

BY: _____

Title: _____          HARVINDER SINGH

ISLANDIADEVELOPMENT

## AGREEMENT OF PURCHASE AND SALE

**AGREEMENT** made this 2ⁿᵈ day of January 2015, by and between **ISLIP DEVELOPMENT CORP.**, (hereinafter referred to as "SELLER'), a New York corporation having its principal place of business at 3239 Sunrise Highway, Islip Terrace, NY 11752, an individual residing at **HARVINDER SINGH**, or a corporate entity to be formed of which he is a principal (hereinafter referred to as "PURCHASER").

**WHEREAS,** the Seller owns and operates a "Gulf/Mobil" branded retail gasoline station and convenience store business (the "Business") located at 3239 Sunrise Highway, Islip Terrace, NY 11752 ("Premises"), pursuant to a PMPA Motor Fuels Franchise Agreement (hereinafter referred to as the "Franchise") with Cumberland. (hereinafter referred to as "Cumberland") and

**WHEREAS,** Seller wishes to sell the assets of the Business to Purchaser, and Purchaser desires to acquire said Business, including all of the assets of the Business owned by Seller, on the terms and conditions hereinafter contained.

**WHEREAS,** the parties desire to reduce their terms, conditions and provisions to writing.

**NOW, THEREFORE,** in consideration of the covenants and agreements hereafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the parties hereto agree as follows:

1. **PURCHASE AND SALE:** The Seller hereby agrees to sell, transfer and deliver to Purchaser and the Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the assets of the Business, including Seller's Franchise rights, the security deposit, all leasehold improvements, equipment, trade fixtures, and other chattels and personal property, including inventory at the Premises, as more fully set forth in Schedule "A" annexed hereto, as well as the Franchise, trade name, goodwill, telephone number(s) and licenses (beer, cigarettes, lottery)(the "Licenses") to the extent they shall be transferable, of the Business (the "Assets"). At Closing, hereinafter defined, the Assets shall be delivered by Seller to Purchaser free and clear of any debts, mortgages, security interests or other liens or encumbrances.

2. **PURCHASE PRICE:** As and for consideration for the sale of the Business, Purchaser agrees to pay to Seller the sum of **$450,000** Dollars (the Purchase Price"), as follows:

   A.   $10,000, upon the execution of this Agreement, payable to the order of Seller's

1

attorneys, as Escrow Agent, to be held by Escrow Agent pursuant to the terms of this Agreement ("Down Payment"); and

B.    $440,000, at Closing, by certified or bank check, payable to Seller.

3.    **ESCROWEE.** The Down payment made hereunder shall be payable to and held by DiCrescio & Trivedi, LLP, ("Escrowee") as attorney for the Seller, in escrow in a bank account at TD Bank in New York until Closing or sooner termination for this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph.

4.    **INVENTORY:**    The Purchase Price does not include inventory

5.    **CONDITIONS OF CLOSING:** This transaction is specifically made subject to the following condition(s):

1.    Cumberland's written consent of this transaction and accepting the Purchaser as a Franchise Dealer for 3239 Sunrise Highway, Islip Terrace, NY 11752

2.    Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a simultaneous execution of a new three (3) year Franchise Agreement or an assignment of the existing Franchise Agreement between Cumberland and the Purchaser for 3239 Sunrise Highway, Islip Terrace, NY 11752

6.    **CONDITION OF EQUIPMENT:** The Seller makes no representations as to the condition of the trade fixtures and equipment and the Purchaser acknowledges that the fixtures and equipment are being sold in their "as is" condition, except that they will be in working order at the time of the Closing.

7.    **LIENS AGAINST CHATTELS:**    If any lien or encumbrance upon equipment should exist, then the Seller shall satisfy such lien or encumbrances prior to the Closing. If the Seller shall have failed to obtain a satisfaction thereof before the date of Closing, then at the Closing, the Seller shall deposit with his attorney a sum sufficient to assure the payment and satisfaction thereof. The existence of any liens or encumbrances against the equipment contracted to be sold hereby shall not be deemed an objection to the title, as long as they are satisfied or sufficient money shall be held at Closing to satisfy and remove such liens or encumbrances, to the satisfaction of Purchaser's attorney.

ISLIPDEVELOPMENTCORP

8.    **SELLER'S REPRESENTATIONS:**    Seller and its principals represent and warrant the following:

a.    The Seller is a New York corporation duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller. Seller shall provide a Resolution to that effect executed by all the shareholders of the Corporation at Closing.

b.    That during the period from the date of this Agreement to the Closing, the Seller shall continue to operate the Business in its present manner and employees will not willfully commit any act, or in any way assist others to commit any act, for the purpose of injuring the Business and without limiting the generality of the foregoing, that they will not divulge any confidential information or make available to others any documents, customers lists or other papers from the Premises, or obtain any loans.

9.    **PURCHASER'S REPRESENTATIONS:** The Purchaser represents and warrants the following:

a.    Purchaser is under no legal disability and knows of no reason prohibiting or preventing them from entering into this transaction and closing the same.

b.    To the best of Purchaser's knowledge, Purchaser has a good credit rating for the purpose of applying to and obtaining consent of Cumberland Farm to obtaining a new Franchise Dealer Agreement of the Premises.

10.    **NO OTHER REPRESENTATIONS:**    Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement. Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or the business or this agreement furnished by any broker, agent or other person, unless

3

specifically set forth in this Agreement. Purchaser has inspected the Assets, Purchaser agrees to take the Assets "As Is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the date of the execution of this Agreement and the Closing, except that all equipment and trade fixtures shall be in good working order at Closing.

11. **CLOSING DATE:** Closing shall take place on or about ⟨60 Days.⟩ or within five (5) days of the satisfaction of all of the conditions of Closing set forth in this Agreement have been satisfied. The closing shall take place at the office of the Seller's attorney or Purchaser's attorney or any other convenient place agreed upon by the parties.

12. **LIQUIDATED DAMAGES:** In the event of any default of the terms and conditions of this Agreement by either party, the defaulting party will have ten (10) days to cure said default upon written notice thereof. If Purchaser shall fail to cure said default, this Agreement shall be terminated and the Escrow Agent shall pay and deliver all escrow funds to Seller as liquidated damages, it being agreed that Seller's actual damages may be impossible to ascertain and that the escrow deposit constitutes a fair and reasonable amount of damages under the circumstances and not a penalty. If Seller shall fail to cure said default, Seller's liability is limited to the contract deposit, plus actual cost and expenses incurred by the Purchaser, in addition to Purchaser seeking specific performance.

13. **SURVIVAL:** None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the Closing. Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every agreement and obligation on the part of Seller hereunder, except those expressly are stated herein to survive the Closing.

14. **ENTIRE UNDERSTANDING:** This Agreement, including the attached Schedules sets forth the entire agreement and understanding of the parties in respect to the subject matter hereof and supersedes all prior agreements, arrangements and undertakings relating to the subject matter hereof.

15. **BROKER:** The Seller and Purchaser acknowledge that there are no broker involved in bringing about this transaction and each party shall indemnify the other party against any claims of brokers related hereto. Seller shall be responsible for paying a broker commission, pursuant to a separate agreement.

4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed the date and year set forth above.

SELLER:                                      PURCHASER:

ISLIP DEVELOPMENT CORP.

BY: _____          _____

Title: _____          HARVINDER SINGH

ISLIPDEVELOPMENTCORP

## AGREEMENT OF PURCHASE AND SALE

AGREEMENT made this 2nd day of January 2015, by and between MEDFORD DEVELOPMENT, (hereinafter referred to as "SELLER'), a New York corporation having its principal place of business at 286 Expressway Dr South, Medford, New York 11763, an individual residing at HARVINDER SINGH, or a corporate entity to be formed of which he is a principal (hereinafter referred to as "PURCHASER").

WHEREAS, the Seller owns and operates a "Gulf" branded retail gasoline station and convenience store business (the "Business") located at 286 Expressway Dr South, Medford, New York 11763 ("Premises"), pursuant to a PMPA Motor Fuels Franchise Agreement (hereinafter referred to as the "Franchise") with Cumberland. (hereinafter referred to as "Cumberland") and

WHEREAS, Seller wishes to sell the assets of the Business to Purchaser, and Purchaser desires to acquire said Business, including all of the assets of the Business owned by Seller, on the terms and conditions hereinafter contained.

WHEREAS, the parties desire to reduce their terms, conditions and provisions to writing.

NOW, THEREFORE, in consideration of the covenants and agreements hereafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the parties hereto agree as follows:

1.    PURCHASE AND SALE: The Seller hereby agrees to sell, transfer and deliver to Purchaser and the Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the assets of the Business, including Seller's Franchise rights, the security deposit, all leasehold improvements, equipment, trade fixtures, and other chattels and personal property, including inventory at the Premises, as more fully set forth in Schedule "A" annexed hereto, as well as the Franchise, trade name, goodwill, telephone number(s) and licenses (beer, cigarettes, lottery)(the "Licenses") to the extent they shall be transferable, of the Business (the "Assets"). At Closing, hereinafter defined, the Assets shall be delivered by Seller to Purchaser free and clear of any debts, mortgages, security interests or other liens or encumbrances.

2.    PURCHASE PRICE: As and for consideration for the sale of the Business, Purchaser agrees to pay to Seller the sum of $450,000 Dollars (the Purchase Price"), as follows:

1

A.   $10,000, upon the execution of this Agreement, payable to the order of Seller's attorneys, as Escrow Agent, to be held by Escrow Agent pursuant to the terms of this Agreement ("Down Payment"); and

B.   $440,000, at Closing, by certified or bank check, payable to Seller.

3.   **ESCROWEE.** The Down payment made hereunder shall be payable to and held by DiCrescio & Trivedi, LLP, ("Escrowee") as attorney for the Seller, in escrow in a bank account at TD Bank in New York until Closing or sooner termination for this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph.

4.   **INVENTORY:**   The Purchase Price does not include inventory

5.   **CONDITIONS OF CLOSING:** This transaction is specifically made subject to the following condition(s):

1.   Cumberland's written consent of this transaction and accepting the Purchaser as a Franchise Dealer for 286 Express Drive South, Medford, New York 11763.

2.   Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a simultaneous execution of a new three (3) year Franchise Agreement or an assignment of the existing Franchise Agreement between Cumberland and the Purchaser for 286 Express Drive South, Medford, New York 11763.

6.   **CONDITION OF EQUIPMENT:** The Seller makes no representations as to the condition of the trade fixtures and equipment and the Purchaser acknowledges that the fixtures and equipment are being sold in their "as is" condition, except that they will be in working order at the time of the Closing.

7.   **LIENS AGAINST CHATTELS:**   If any lien or encumbrance upon equipment should exist, then the Seller shall satisfy such lien or encumbrances prior to the Closing. If the Seller shall have failed to obtain a satisfaction thereof before the date of Closing, then at the Closing, the Seller shall deposit with his attorney a sum sufficient to assure the payment and satisfaction thereof. The existence of any liens or encumbrances against the equipment contracted to be sold hereby shall not be deemed an objection to the title, as long as they are satisfied or sufficient money shall be held at Closing to satisfy and remove such liens or encumbrances, to the satisfaction of Purchaser's attorney.

2

8.    **SELLER'S REPRESENTATIONS:**    Seller and its principals represent and warrant the following:

a.    The Seller is a New York corporation duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller. Seller shall provide a Resolution to that effect executed by all the shareholders of the Corporation at Closing.

b.    That during the period from the date of this Agreement to the Closing, the Seller shall continue to operate the Business in its present manner and employees will not willfully commit any act, or in any way assist others to commit any act, for the purpose of injuring the Business and without limiting the generality of the foregoing, that they will not divulge any confidential information or make available to others any documents, customers lists or other papers from the Premises, or obtain any loans.

9.    **PURCHASER'S REPRESENTATIONS:** The Purchaser represents and warrants the following:

a.    Purchaser is under no legal disability and knows of no reason prohibiting or preventing them from entering into this transaction and closing the same.

b.    To the best of Purchaser's knowledge, Purchaser has a good credit rating for the purpose of applying to and obtaining consent of Cumberland Farm to obtaining a new Franchise Dealer Agreement of the Premises.

10.    **NO OTHER REPRESENTATIONS:**    Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement. Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or the business or this agreement furnished by any broker, agent or other person, unless

3

specifically set forth in this Agreement. Purchaser has inspected the Assets, Purchaser agrees to take the Assets "As Is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the date of the execution of this Agreement and the Closing, except that all equipment and trade fixtures shall be in good working order at Closing.

11.    **CLOSING DATE:**    Closing shall take place on or about _60 Days._ or within five (5) days of the satisfaction of all of the conditions of Closing set forth in this Agreement have been satisfied. The closing shall take place at the office of the Seller's attorney or Purchaser's attorney or any other convenient place agreed upon by the parties.

12.    **LIQUIDATED DAMAGES:** In the event of any default of the terms and conditions of this Agreement by either party, the defaulting party will have ten (10) days to cure said default upon written notice thereof. If Purchaser shall fail to cure said default, this Agreement shall be terminated and the Escrow Agent shall pay and deliver all escrow funds to Seller as liquidated damages, it being agreed that Seller's actual damages may be impossible to ascertain and that the escrow deposit constitutes a fair and reasonable amount of damages under the circumstances and not a penalty. If Seller shall fail to cure said default, Seller's liability is limited to the contract deposit, plus actual cost and expenses incurred by the Purchaser, in addition to Purchaser seeking specific performance.

13.    **SURVIVAL:** None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the Closing. Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every agreement and obligation on the part of Seller hereunder, except those expressly are stated herein to survive the Closing.

14.    **ENTIRE UNDERSTANDING:**    This Agreement, including the attached Schedules sets forth the entire agreement and understanding of the parties in respect to the subject matter hereof and supersedes all prior agreements, arrangements and undertakings relating to the subject matter hereof.

15.    **BROKER:**    The Seller and Purchaser acknowledge that there are no broker involved in bringing about this transaction and each party shall indemnify the other party against any claims of brokers related hereto. Seller shall be responsible for paying a broker commission, pursuant to a separate agreement.

4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed the date and year set forth above.

SELLER:                                          PURCHASER:

MEDFORD DEVELOPMENT

BY: _____          _____

Title: _____          HARVINDER SINGH

MEDFORDDEVELOPMENT

## AGREEMENT OF PURCHASE AND SALE

AGREEMENT made this 2nd day of January 2015, by and between OCEANSIDE DEVELOPMENT, (hereinafter referred to as "SELLER'), a New York corporation having its principal place of business at 2962 LongBeach Road, Oceanside, NY 11572, an individual residing at HARVINDER SINGH, or a corporate entity to be formed of which he is a principal (hereinafter referred to as "PURCHASER").

WHEREAS, the Seller owns and operates a "Gulf/Mobil" branded retail gasoline station and convenience store business (the "Business") located at 2962 LongBeach Road, Oceanside, NY 11572 ("Premises"), pursuant to a PMPA Motor Fuels Franchise Agreement (hereinafter referred to as the "Franchise") with Cumberland. (hereinafter referred to as "Cumberland") and

WHEREAS, Seller wishes to sell the assets of the Business to Purchaser, and Purchaser desires to acquire said Business, including all of the assets of the Business owned by Seller, on the terms and conditions hereinafter contained.

WHEREAS, the parties desire to reduce their terms, conditions and provisions to writing.

NOW, THEREFORE, in consideration of the covenants and agreements hereafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the parties hereto agree as follows:

1.      PURCHASE AND SALE: The Seller hereby agrees to sell, transfer and deliver to Purchaser and the Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the assets of the Business, including Seller's Franchise rights, the security deposit, all leasehold improvements, equipment, trade fixtures, and other chattels and personal property, including inventory at the Premises, as more fully set forth in Schedule "A" annexed hereto, as well as the Franchise, trade name, goodwill, telephone number(s) and licenses (beer, cigarettes, lottery)(the "Licenses") to the extent they shall be transferable, of the Business (the "Assets"). At Closing, hereinafter defined, the Assets shall be delivered by Seller to Purchaser free and clear of any debts, mortgages, security interests or other liens or encumbrances.

2.      PURCHASE PRICE: As and for consideration for the sale of the Business, Purchaser agrees to pay to Seller the sum of $450,000 Dollars (the Purchase Price"), as follows:

A.      $10,000, upon the execution of this Agreement, payable to the order of Seller's

1

attorneys, as Escrow Agent, to be held by Escrow Agent pursuant to the terms of this Agreement ("Down Payment"); and

    B.    $440,000, at Closing, by certified or bank check, payable to Seller.

3.    **ESCROWEE.** The Down payment made hereunder shall be payable to and held by DiCrescio & Trivedi, LLP, ("Escrowee") as attorney for the Seller, in escrow in a bank account at TD Bank in New York until Closing or sooner termination for this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph.

4.    **INVENTORY:**    The Purchase Price does not include inventory

5.    **CONDITIONS OF CLOSING:** This transaction is specifically made subject to the following condition(s):

    1.    Cumberland's written consent of this transaction and accepting the Purchaser as a Franchise Dealer for 2962 LongBeach Road, Oceanside, NY 11572

    2.    Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a simultaneous execution of a new three (3) year Franchise Agreement or an assignment of the existing Franchise Agreement between Cumberland and the Purchaser for 2962 LongBeach Road, Oceanside, NY 11572.

6.    **CONDITION OF EQUIPMENT:** The Seller makes no representations as to the condition of the trade fixtures and equipment and the Purchaser acknowledges that the fixtures and equipment are being sold in their "as is" condition, except that they will be in working order at the time of the Closing.

7.    **LIENS AGAINST CHATTELS:**    If any lien or encumbrance upon equipment should exist, then the Seller shall satisfy such lien or encumbrances prior to the Closing. If the Seller shall have failed to obtain a satisfaction thereof before the date of Closing, then at the Closing, the Seller shall deposit with his attorney a sum sufficient to assure the payment and satisfaction thereof. The existence of any liens or encumbrances against the equipment contracted to be sold hereby shall not be deemed an objection to the title, as long as they are satisfied or sufficient money shall be held at Closing to satisfy and remove such liens or encumbrances, to the satisfaction of Purchaser's attorney.

OCEANSIDEDEVELOPMENT

8.   **SELLER'S REPRESENTATIONS:**   Seller and its principals represent and warrant the following:

   a.   The Seller is a New York corporation duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller. Seller shall provide a Resolution to that effect executed by all the shareholders of the Corporation at Closing.

   b.   That during the period from the date of this Agreement to the Closing, the Seller shall continue to operate the Business in its present manner and employees will not willfully commit any act, or in any way assist others to commit any act, for the purpose of injuring the Business and without limiting the generality of the foregoing, that they will not divulge any confidential information or make available to others any documents, customers lists or other papers from the Premises, or obtain any loans.

9.   **PURCHASER'S REPRESENTATIONS:** The Purchaser represents and warrants the following:

   a.   Purchaser is under no legal disability and knows of no reason prohibiting or preventing them from entering into this transaction and closing the same.

   b.   To the best of Purchaser's knowledge, Purchaser has a good credit rating for the purpose of applying to and obtaining consent of Cumberland Farm to obtaining a new Franchise Dealer Agreement of the Premises.

10.   **NO OTHER REPRESENTATIONS:**   Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement. Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or the business or this agreement furnished by any broker, agent or other person, unless

3

specifically set forth in this Agreement. Purchaser has inspected the Assets, Purchaser agrees to take the Assets "As Is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the date of the execution of this Agreement and the Closing, except that all equipment and trade fixtures shall be in good working order at Closing.

11.    **CLOSING DATE:**    Closing shall take place on or about _____ or within five (5) days of the satisfaction of all of the conditions of Closing set forth in this Agreement have been satisfied.  The closing shall take place at the office of the Seller's attorney or Purchaser's attorney or any other convenient place agreed upon by the parties.

12.    **LIQUIDATED DAMAGES:** In the event of any default of the terms and conditions of this Agreement by either party, the defaulting party will have ten (10) days to cure said default upon written notice thereof. If Purchaser shall fail to cure said default, this Agreement shall be terminated and the Escrow Agent shall pay and deliver all escrow funds to Seller as liquidated damages, it being agreed that Seller's actual damages may be impossible to ascertain and that the escrow deposit constitutes a fair and reasonable amount of damages under the circumstances and not a penalty. If Seller shall fail to cure said default, Seller's liability is limited to the contract deposit, plus actual cost and expenses incurred by the Purchaser, in addition to Purchaser seeking specific performance.

13.    **SURVIVAL:** None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the Closing. Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every agreement and obligation on the part of Seller hereunder, except those expressly are stated herein to survive the Closing.

14.    **ENTIRE UNDERSTANDING:**    This Agreement, including the attached Schedules sets forth the entire agreement and understanding of the parties in respect to the subject matter hereof and supersedes all prior agreements, arrangements and undertakings relating to the subject matter hereof.

15.    **BROKER:**    The Seller and Purchaser acknowledge that there are no broker involved in bringing about this transaction and each party shall indemnify the other party against any claims of brokers related hereto. Seller shall be responsible for paying a broker commission, pursuant to a separate agreement.

4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed the date and year set forth above.

SELLER:                                          PURCHASER:

OCEANSIDE DEVELOPMENT

BY: _____

Title: _____                    HARVINDER SINGH

OCEANSIDEDEVELOPMENT

## AGREEMENT OF PURCHASE AND SALE

AGREEMENT made this 2ᴺᴰ day of January 2015, by and between RONKONKOMA DEVELOPMENT, (hereinafter referred to as "SELLER'), a New York corporation having its principal place of business at 4560 Express Dr. S, Ronkonkoma, NY 11779, an individual residing at HARVINDER SINGH, or a corporate entity to be formed of which he is a principal (hereinafter referred to as "PURCHASER").

WHEREAS, the Seller owns and operates a "Gulf/Mobil" branded retail gasoline station and convenience store business (the "Business") located at 4560 Express Dr. S, Ronkonkoma, NY 11779 ("Premises"), pursuant to a PMPA Motor Fuels Franchise Agreement (hereinafter referred to as the "Franchise") with Cumberland. (hereinafter referred to as "Cumberland") and

WHEREAS, Seller wishes to sell the assets of the Business to Purchaser, and Purchaser desires to acquire said Business, including all of the assets of the Business owned by Seller, on the terms and conditions hereinafter contained.

WHEREAS, the parties desire to reduce their terms, conditions and provisions to writing.

NOW, THEREFORE, in consideration of the covenants and agreements hereafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the parties hereto agree as follows:

1.    PURCHASE AND SALE: The Seller hereby agrees to sell, transfer and deliver to Purchaser and the Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the assets of the Business, including Seller's Franchise rights, the security deposit, all leasehold improvements, equipment, trade fixtures, and other chattels and personal property, including inventory at the Premises, as more fully set forth in Schedule "A" annexed hereto, as well as the Franchise, trade name, goodwill, telephone number(s) and licenses (beer, cigarettes, lottery)(the "Licenses") to the extent they shall be transferable, of the Business (the "Assets"). At Closing, hereinafter defined, the Assets shall be delivered by Seller to Purchaser free and clear of any debts, mortgages, security interests or other liens or encumbrances.

2.    PURCHASE PRICE: As and for consideration for the sale of the Business, Purchaser agrees to pay to Seller the sum of $450,000 Dollars (the Purchase Price"), as follows:

A.    $10,000, upon the execution of this Agreement, payable to the order of Seller's

1

attorneys, as Escrow Agent, to be held by Escrow Agent pursuant to the terms of this Agreement ("Down Payment"); and

B.      $440,000, at Closing, by certified or bank check, payable to Seller.

3.      **ESCROWEE.** The Down payment made hereunder shall be payable to and held by DiCrescio & Trivedi, LLP, ("Escrowee") as attorney for the Seller, in escrow in a bank account at TD Bank in New York until Closing or sooner termination for this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph.

4.      **INVENTORY:**      The Purchase Price does not include inventory

5.      **CONDITIONS OF CLOSING:** This transaction is specifically made subject to the following condition(s):

1.      Cumberland's written consent of this transaction and accepting the Purchaser as a Franchise Dealer for 4560 Express Dr. S, Ronkonkoma, NY 11779.

2.      Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a simultaneous execution of a new three (3) year Franchise Agreement or an assignment of the existing Franchise Agreement between Cumberland and the Purchaser for 4560 Express Dr. S, Ronkonkoma, NY 11779.

6.      **CONDITION OF EQUIPMENT:** The Seller makes no representations as to the condition of the trade fixtures and equipment and the Purchaser acknowledges that the fixtures and equipment are being sold in their "as is" condition, except that they will be in working order at the time of the Closing.

7.      **LIENS AGAINST CHATTELS:**      If any lien or encumbrance upon equipment should exist, then the Seller shall satisfy such lien or encumbrances prior to the Closing. If the Seller shall have failed to obtain a satisfaction thereof before the date of Closing, then at the Closing, the Seller shall deposit with his attorney a sum sufficient to assure the payment and satisfaction thereof. The existence of any liens or encumbrances against the equipment contracted to be sold hereby shall not be deemed an objection to the title, as long as they are satisfied or sufficient money shall be held at Closing to satisfy and remove such liens or encumbrances, to the satisfaction of Purchaser's attorney.

2

RONKONKOMA DEVELOPMENT

8.    **SELLER'S REPRESENTATIONS:**    Seller and its principals represent and warrant the following:

a.    The Seller is a New York corporation duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller. Seller shall provide a Resolution to that effect executed by all the shareholders of the Corporation at Closing.

b.    That during the period from the date of this Agreement to the Closing, the Seller shall continue to operate the Business in its present manner and employees will not willfully commit any act, or in any way assist others to commit any act, for the purpose of injuring the Business and without limiting the generality of the foregoing, that they will not divulge any confidential information or make available to others any documents, customers lists or other papers from the Premises, or obtain any loans.

9.    **PURCHASER'S REPRESENTATIONS:** The Purchaser represents and warrants the following:

a.    Purchaser is under no legal disability and knows of no reason prohibiting or preventing them from entering into this transaction and closing the same.

b.    To the best of Purchaser's knowledge, Purchaser has a good credit rating for the purpose of applying to and obtaining consent of Cumberland Farm to obtaining a new Franchise Dealer Agreement of the Premises.

10.    **NO OTHER REPRESENTATIONS:**    Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement. Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or the business or this agreement furnished by any broker, agent or other person, unless

3

specifically set forth in this Agreement. Purchaser has inspected the Assets, Purchaser agrees to take the Assets "As Is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the date of the execution of this Agreement and the Closing, except that all equipment and trade fixtures shall be in good working order at Closing.

11. **CLOSING DATE:** Closing shall take place on or about ____ 60 DAYS. or within five (5) days of the satisfaction of all of the conditions of Closing set forth in this Agreement have been satisfied. The closing shall take place at the office of the Seller's attorney or Purchaser's attorney or any other convenient place agreed upon by the parties.

12. **LIQUIDATED DAMAGES:** In the event of any default of the terms and conditions of this Agreement by either party, the defaulting party will have ten (10) days to cure said default upon written notice thereof. If Purchaser shall fail to cure said default, this Agreement shall be terminated and the Escrow Agent shall pay and deliver all escrow funds to Seller as liquidated damages, it being agreed that Seller's actual damages may be impossible to ascertain and that the escrow deposit constitutes a fair and reasonable amount of damages under the circumstances and not a penalty. If Seller shall fail to cure said default, Seller's liability is limited to the contract deposit, plus actual cost and expenses incurred by the Purchaser, in addition to Purchaser seeking specific performance.

13. **SURVIVAL:** None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the Closing. Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every agreement and obligation on the part of Seller hereunder, except those expressly are stated herein to survive the Closing.

14. **ENTIRE UNDERSTANDING:** This Agreement, including the attached Schedules sets forth the entire agreement and understanding of the parties in respect to the subject matter hereof and supersedes all prior agreements, arrangements and undertakings relating to the subject matter hereof.

15. **BROKER:** The Seller and Purchaser acknowledge that there are no broker involved in bringing about this transaction and each party shall indemnify the other party against any claims of brokers related hereto. Seller shall be responsible for paying a broker commission, pursuant to a separate agreement.

RONKONKOMA DEVELOPMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed the date and year set forth above.

SELLER:                                    PURCHASER:

RONKONKOMA DEVELOPMENT

BY: _____        _____
                                           HARVINDER SINGH
Title: _____

$

RONKONKOMA DEVELOPMENT