MACCO & STERN, LLP
Attorneys At Law
135 Pinelawn Road
Suite 120 South
Melville, New York 11747
www.maccosternlaw.com

Michael J. Macco
Richard L. Stern

Telephone (631) 549-7900
Facsimile (631) 549-7845

Peter Corey
Cooper J Macco

January 22, 2015

**VIA ELECTRONIC FILING**
Honorable Alan S. Trust
United States Bankruptcy Judge
290 Federal Plaza, Courtroom 960
Central Islip, New York 11722

> Re:  **Medford Development Corp., et al.**
>      **Chapter 11 (Jointly Administered)**
>      **Case No. 14-75666 (AST)**

Honorable Sir:

This firm represents Medford Development Corp. and its affiliated entities (collectively, the "Debtors"),[1] the above-referenced debtors and debtors-in-possession.

On or about January 13, 2015, the Debtors filed a motion (the "Motion") seeking entry of an order: (i) authorizing and approving the sale of substantially all of certain Debtors assets, including of sale procedures and assignment procedures, subject to higher and better offers; (ii) authorizing the Debtors to assume and assign certain executory contracts and unexpired leases; and (iii) extending the Debtors' time to assume or reject executory contracts and unexpired leases (ECF Doc. No. 39).

Contemporaneously with the filing of the Motion, the Debtors entered into Sales Contracts for substantially all of the assets of two (2) additional debtors that were included in the

---

[1] The Debtors, with associated case numbers, are as follows: (1) Medford Development Corp., 14-75666 (AST); (2) Motor Parkway Enterprises, Inc., 14-75667 (AST); (3) Airport Development Corp., 14-75683 (AST); (4) Wheeler Development LLC, 14-75668 (AST); (5) Smithtown Development Corp., 14-75669 (AST); (6) Brentwood Development Corp., 14-75670 (AST); (7) Holbrook Development Corp., 14-75671 (AST); (8) Carman Development Corp., 14-75672 (AST); (9) Maple Avenue Hauppauge Dev. Corp., 14-75674 (AST); (10) Port Jefferson Development Corp., 14-75675 (AST); (11) Ronkonkoma Development Corp., 14-75676 (AST); (12) Islandia Development Corp., 14-75676 (AST); (13) Oceanside Enterprises Corp., 14-75678 (AST); (14) Islip Development Corp., 14-75679 (AST); and (15) Westbury Enterprises Inc., 14-75680 (AST).

Motion: (1) Airport Development Corp., and (2) Brentwood Development Corp.  Copies of the Sales Contracts for the two (2) additional debtors are attached hereto.

Additionally, the Debtors were contacted by the attorneys for New York Commercial Bank regarding the proposed Sales Procedures contained in the Motion.  Based on those conversations, the Debtors have amended the proposed Sales Procedures.  A redlined copy of the amended Sales Procedures are contained in **Exhibit A** to the Proposed Order, attached hereto.

If Your Honor has any questions, please do not hesitate to have a member of Your Honor's staff contact me.

Respectfully submitted,

Cooper J Macco

Encl.

## AGREEMENT OF PURCHASE AND SALE

**AGREEMENT** made this ___12___ day of __JANUARY

2015_____, by and between

__**BRENTWOOD DEVELOPMENT**_____, (hereinafter

referred to as ASELLER'), a New York corporation having its principal place of business at

__525 WICKS RD,  BRENTWOOD,  NY

11717_____and  __**MADHAVAN**

**PADMAKUMAR**_____, an individual residing at

_____263 Continental Drive, Manhasset Hills, NY 11040

_____, or a corporate entity to be formed

of which he is a principal (hereinafter referred to as APURCHASER@).

**WHEREAS**, the Seller owns and operates a "MOBIL" branded retail gasoline station

and convenience store business (the "Business") located at __525 WICKS RD, BRENTWOOD,

NY 11717_____ (APremises@), pursuant to a

PMPA Motor Fuels Franchise Agreement (hereinafter referred to as the "Franchise") with

Cumberland. (hereinafter referred to as "Cumberland") and

**WHEREAS,** Seller wishes to sell the assets of the Business to Purchaser, and Purchaser

desires to acquire said Business, including all of the assets of the Business owned by Seller, on

the terms and conditions hereinafter contained.

**WHEREAS,** the parties desire to reduce their terms, conditions and provisions to

writing.

**NOW, THEREFORE**, in consideration of the covenants and agreements hereafter set

forth, and other valuable consideration, the receipt and sufficiency of which hereby is

acknowledged, the parties hereto agree as follows:

1.     **PURCHASE AND SALE**: The Seller hereby agrees to sell, transfer and deliver to

Purchaser and the Purchaser agrees to purchase, upon the terms and conditions hereinafter set

forth, all of the assets of the Business, including Seller's Franchise rights, the security deposit, all

leasehold improvements, equipment, trade fixtures, and other chattels and personal property,

including inventory at the Premises, as more fully set forth in Schedule "A" annexed hereto, as

1

CONTRACT BRENTWOOD

Franchise, trade name, goodwill, telephone number(s) and licenses (beer, cigarettes, lottery)(the "Licenses") to the extent they shall be transferable, of the Business (the "Assets"). At Closing, hereinafter defined, the Assets shall be delivered by Seller to Purchaser free and clear of any debts, mortgages, security interests or other liens or encumbrances.

2.    **PURCHASE PRICE**: As and for consideration for the sale of the Business, Purchaser agrees to pay to Seller the sum of **$____730,000.00_____**Dollars (the Purchase Price"), as follows:

- A.    $___5,000.00_____, upon the execution of this Agreement, payable to the order of Seller's attorneys, as Escrow Agent, to be held by Escrow Agent pursuant to the terms of this Agreement ("Down Payment"); and

- B.    $___725,000.00_____, at Closing, by certified or bank check, payable to Seller,

- C.    Notwithstanding anything to the contrary contained in the said Agreement, Purchaser agrees that the Seller, its successors, assigns, heirs and legal representatives shall have unconditional, unqualified and absolute right to terminate and cancel this Agreement at any time before the closing. If Seller exercises this right, Purchaser's sole remedy shall be to receive down payment deposited herein. Upon such return no party will have any right against the other.

3.    **ESCROWEE.**The Down payment made hereunder shall be payable to and held by DiCrescio & Trivedi, LLP, ("Escrowee") as attorney for the Seller, in escrow in a bank account at TD Bank in New York until Closing or sooner termination for this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph.

4.    **INVENTORY:**    The Purchase Price includes the inventory

5.    **CONDITIONS OF CLOSING**: This transaction is specifically made subject to the following condition(s):

- 1.    Cumberland's written consent of this transaction and accepting the Purchaser as a Franchise    Dealer    for    __525    WICKS    RD    BRENTWOOD    NY 11717_____

- 2.    Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a

2

assignment of the existing Franchise Agreement between Cumberland and the Purchaser for \_\_\_525 WICKS RD BRENTWOOD NY 11717_____

6.    **CONDITION OF EQUIPMENT**: The Seller makes no representations as to the condition of the trade fixtures and equipment and the Purchaser acknowledges that the fixtures and equipment are being sold in their Aas is" condition, except that they will be in working order at the time of the Closing.

7.    **LIENS AGAINST CHATTELS**:    If any lien or encumbrance upon equipment should exist, then the Seller shall satisfy such lien or encumbrances prior to the Closing.  If the Seller shall have failed to obtain a satisfaction thereof before the date of Closing, then at the Closing, the Seller shall deposit with his attorney a sum sufficient to assure the payment and satisfaction thereof.  The existence of any liens or encumbrances against the equipment contracted to be sold hereby shall not be deemed an objection to the title, as long as they are satisfied or sufficient money shall be held at Closing to satisfy and remove such liens or encumbrances, to the satisfaction of Purchaser's attorney.

8.    **SELLER'S REPRESENTATIONS**:        Seller and its principals represent and warrant the following:

        a.    The Seller is a New York corporation duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein.  The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller.  Seller shall provide a Resolution to that effect executed by all the shareholders of the Corporation at Closing.

        b.    That during the period from the date of this Agreement to the Closing, the Seller shall continue to operate the Business in its present manner and employees will not willfully commit any act, or in any way assist others to commit any act, for the purpose of injuring the Business and without limiting the generality of the foregoing, that they will not divulge any confidential information or make available to others any documents, customers lists or other

3

papers from the Premises, or obtain any loans.

9.     **PURCHASER=S REPRESENTATIONS**: The Purchaser represents and warrants the following:

a.     Purchaser is under no legal disability and knows of no reason prohibiting or preventing them from entering into this transaction and closing the same.

b.     To the best of Purchaser's knowledge, Purchaser has a good credit rating for the purpose of applying to and obtaining consent of CUMBERLAND  to obtaining a new Franchise Dealer Agreement of the Premises.

10.    **NO OTHER REPRESENTATIONS:**    Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement.  Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or the business or this agreement furnished by any broker, agent or other person, unless specifically set forth in this Agreement.  Purchaser has inspected the Assets, Purchaser agrees to take the Assets "As Is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the date of the execution of this Agreement and the Closing, except that all equipment and trade fixtures shall be in good working order at Closing.

11.    **CLOSING DATE:**   Closing shall take place on or about _____ or within five (5) days of the satisfaction of all of the conditions of Closing set forth in this Agreement have been satisfied.  The closing shall take place at the office of the Seller's attorney or Purchaser's attorney or any other convenient place agreed upon by the parties.

12.    **LIQUIDATED DAMAGES**:  In the event of any default of the terms and conditions of this Agreement by either party, the defaulting party will have ten (10) days to cure said default upon written notice thereof. If Purchaser shall fail to cure said default, this Agreement shall be terminated and the Escrow Agent shall pay and deliver all escrow funds to Seller as liquidated damages, it being agreed that Seller's actual damages may be impossible to ascertain and that the escrow deposit constitutes a fair and reasonable amount of damages under the circumstances and

4

not a penalty. If Seller shall fail to cure said default, Seller's liability is limited to the contract deposit, plus actual cost and expenses incurred by the Purchaser, in addition to Purchaser seeking specific performance.

13.    **SURVIVAL**: None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the Closing. Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every agreement and obligation on the part of Seller hereunder, except those expressly are stated herein to survive the Closing.

14.    **ENTIRE UNDERSTANDING**:    This Agreement, including the attached Schedules sets forth the entire agreement and understanding of the parties in respect to the subject matter hereof and supersedes all prior agreements, arrangements and undertakings relating to the subject matter hereof.

15.    **BROKER**:    The Seller and Purchaser acknowledge that there are no broker involved in bringing about this transaction and each party shall indemnify the other party against any claims of brokers related hereto.  Seller shall be responsible for paying a broker commission, pursuant to a separate agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed the date and year set forth above.

**SELLER:**                                        **PURCHASER:**

BY: _____          _____

Title: _____          **MADHAVAN PADKUMAR**

5

## AGREEMENT OF PURCHASE AND SALE

**AGREEMENT** made this __12____ day of ___JANUARY

2015_____, by and between

_____**AIRPORT DEVELOPMENT**_____, (hereinafter

referred to as ASELLER'), a New York corporation having its principal place of business at

__133-44 150TH ST JAMAICA NY 11436_____and

__**MADHAVAN  PADMAKUMAR**_____, an individual residing at

_____263 Continental Drive, Manhasset Hills, NY 11040

_____, or a corporate entity to be formed of

which he is a principal (hereinafter referred to as APURCHASER@).

**WHEREAS,** the Seller owns and operates a "GULF" branded retail gasoline station and

convenience store business (the "Business") located at ____133-44 150TH ST JAMAICA NY

11436_____ (APremises@), pursuant to a PMPA

Motor Fuels Franchise Agreement (hereinafter referred to as the "Franchise") with Cumberland.

(hereinafter referred to as "Cumberland") and

**WHEREAS,** Seller wishes to sell the assets of the Business to Purchaser, and Purchaser

desires to acquire said Business, including all of the assets of the Business owned by Seller, on

the terms and conditions hereinafter contained.

**WHEREAS,** the parties desire to reduce their terms, conditions and provisions to

writing.

**NOW, THEREFORE**, in consideration of the covenants and agreements hereafter set

forth, and other valuable consideration, the receipt and sufficiency of which hereby is

acknowledged, the parties hereto agree as follows:

1.     **PURCHASE AND SALE:** The Seller hereby agrees to sell, transfer and deliver to Purchaser

and the Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the

assets of the Business, including Seller's Franchise rights, the security deposit, all leasehold

improvements, equipment, trade fixtures, and other chattels and personal property, including

1

CONTRACT AIRPORT

"Licenses") to the extent they shall be transferable, of the Business (the "Assets"). At Closing, hereinafter defined, the Assets shall be delivered by Seller to Purchaser free and clear of any debts, mortgages, security interests or other liens or encumbrances.

2.     **PURCHASE PRICE**: As and for consideration for the sale of the Business, Purchaser agrees to pay to Seller the sum of **$_____730,000.00_____** Dollars (the Purchase Price"), as follows:

    A.     $___5,000.00_____, upon the execution of this Agreement, payable to the order of Seller's attorneys, as Escrow Agent, to be held by Escrow Agent pursuant to the terms of this Agreement ("Down Payment"); and

    B.     $____725,000.00_____, at Closing, by certified or bank check, payable to Seller,

    C.     Notwithstanding anything to the contrary contained in the said Agreement, Purchaser agrees that the Seller, its successors, assigns, heirs and legal representatives shall have unconditional, unqualified and absolute right to terminate and cancel this Agreement at any time before the closing. If Seller exercises this right, Purchaser's sole remedy shall be to receive down payment deposited herein. Upon such return no party will have any right against the other.

3.     **ESCROWEE.** The Down payment made hereunder shall be payable to and held by DiCrescio & Trivedi, LLP, ("Escrowee") as attorney for the Seller, in escrow in a bank account at TD Bank in New York until Closing or sooner termination for this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph.

4.     **INVENTORY:**     The Purchase Price includes the inventory

5.     **CONDITIONS OF CLOSING**: This transaction is specifically made subject to the following condition(s):

    1.     Cumberland's written consent of this transaction and accepting the Purchaser as a Franchise     Dealer     for     __133-44     150TH     ST     JAMAICA     NY 11436_____

    2.     Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a simultaneous execution of a new three (3) year Franchise Agreement or an

2

2.    Cumberland's acceptance of a "Mutual Cancellation" from the Seller and a simultaneous execution of a new three (3) year Franchise Agreement or an assignment of the existing Franchise Agreement between Cumberland and the Purchaser    for    ___133-44    150TH    ST    JAMAICA    NY 11436_____

6.    **CONDITION OF EQUIPMENT**: The Seller makes no representations as to the condition of the trade fixtures and equipment and the Purchaser acknowledges that the fixtures and equipment are being sold in their Aas is" condition, except that they will be in working order at the time of the Closing.

7.    **LIENS AGAINST CHATTELS**:    If any lien or encumbrance upon equipment should exist, then the Seller shall satisfy such lien or encumbrances prior to the Closing. If the Seller shall have failed to obtain a satisfaction thereof before the date of Closing, then at the Closing, the Seller shall deposit with his attorney a sum sufficient to assure the payment and satisfaction thereof. The existence of any liens or encumbrances against the equipment contracted to be sold hereby shall not be deemed an objection to the title, as long as they are satisfied or sufficient money shall be held at Closing to satisfy and remove such liens or encumbrances, to the satisfaction of Purchaser's attorney.

8.    **SELLER'S REPRESENTATIONS**:        Seller and its principals represent and warrant the following:

a.    The Seller is a New York corporation duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller. Seller shall provide a Resolution to that effect executed by all the shareholders of the Corporation at Closing.

b.    That during the period from the date of this Agreement to the Closing, the Seller shall continue to operate the Business in its present manner and employees will not willfully commit any act, or in any way assist others to commit any act, for the purpose of injuring the Business and

3

without limiting the generality of the foregoing, that they will not divulge any confidential information or make available to others any documents, customers lists or other papers from the Premises, or obtain any loans.

9.    **PURCHASER=S REPRESENTATIONS**: The Purchaser represents and warrants the following:

a.    Purchaser is under no legal disability and knows of no reason prohibiting or preventing them from entering into this transaction and closing the same.

b.    To the best of Purchaser's knowledge, Purchaser has a good credit rating for the purpose of applying to and obtaining consent of CUMBERLAND to obtaining a new Franchise Dealer Agreement of the Premises.

10.    **NO OTHER REPRESENTATIONS:**    Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement. Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or the business or this agreement furnished by any broker, agent or other person, unless specifically set forth in this Agreement. Purchaser has inspected the Assets, Purchaser agrees to take the Assets "As Is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the date of the execution of this Agreement and the Closing, except that all equipment and trade fixtures shall be in good working order at Closing.

11.    **CLOSING DATE:**    Closing shall take place on or about _____ or within five (5) days of the satisfaction of all of the conditions of Closing set forth in this Agreement have been satisfied. The closing shall take place at the office of the Seller's attorney or Purchaser's attorney or any other convenient place agreed upon by the parties.

12.    **LIQUIDATED DAMAGES**: In the event of any default of the terms and conditions of this Agreement by either party, the defaulting party will have ten (10) days to cure said default upon written notice thereof. If Purchaser shall fail to cure said default, this Agreement shall be terminated and the Escrow Agent shall pay and deliver all escrow funds to Seller as liquidated damages, it being

4

agreed that Seller's actual damages may be impossible to ascertain and that the escrow deposit constitutes a fair and reasonable amount of damages under the circumstances and not a penalty. If Seller shall fail to cure said default, Seller's liability is limited to the contract deposit, plus actual cost and expenses incurred by the Purchaser, in addition to Purchaser seeking specific performance.

13.     **SURVIVAL**: None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the Closing. Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every agreement and obligation on the part of Seller hereunder, except those expressly are stated herein to survive the Closing.

14.     **ENTIRE UNDERSTANDING**:     This Agreement, including the attached Schedules sets forth the entire agreement and understanding of the parties in respect to the subject matter hereof and supersedes all prior agreements, arrangements and undertakings relating to the subject matter hereof.

15.     **BROKER**:     The Seller and Purchaser acknowledge that there are no broker involved in bringing about this transaction and each party shall indemnify the other party against any claims of brokers related hereto. Seller shall be responsible for paying a broker commission, pursuant to a separate agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed the date and year set forth above.

**SELLER:**                                    **PURCHASER:**

BY: _____

Title: _____          **MADHAVAN PADMAKUMAR**

5

CONTRACT AIRPORT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

In re:                                          Chapter 11

Medford Development Corp.                        Case No.: 8-14-75666 (AST)
Motor Parkway Enterprises Inc.                   Case No.: 8-14-75667 (AST)
Airport Development Corp.                        Case No.: 8-14-75683 (AST)
Wheeler Development LLC                           Case No.: 8-14-75668 (AST)
Smithtown Development Corp.                       Case No.: 8-14-75669 (AST)
Brentwood Development Corp.                       Case No.: 8-14-75670 (AST)
Holbrook Development Corp.                        Case No.: 8-14-75671 (AST)
Carman Development Corp.                          Case No.: 8-14-75672 (AST)
Maple Avenue Hauppauge Dev. Corp.                Case No.: 8-14-75674 (AST)
Port Jefferson Development Corp.                 Case No.: 8-14-75675 (AST)
Ronkonkoma Development Corp.                      Case No.: 8-14-75676 (AST)
Islandia Development Corp.                        Case No.: 8-14-75677 (AST)
Oceanside Enterprises Inc.                        Case No.: 8-14-75678 (AST)
Islip Development Corp.                           Case No.: 8-14-75679 (AST)
Westbury Enterprises Inc.                         Case No.: 8-14-75680 (AST)

                              Debtors.           (Jointly Administered)

------------------------------------------------------------------ X

### ORDER APPROVING THE MOTION BY THE DEBTORS AND DEBTORS-IN-POSSESSION'S TO (I) AUTHORIZE THE SALE OF SUBSTANTIALLY ALL OF CERTAIN DEBTORS' ASSETS; (II) AUTHORIZE THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) EXTEND THE TIME TO ASSUME OR REJECT EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "Motion"), dated January 13, 2015 of Medford Development Corp.

and its affiliated entities (collectively, the "Debtors"),[1] the above-referenced debtors and debtors-

in-possessions, by and through their proposed counsel, Macco & Stern, LLP, seeking entry of an

order of this Court: (i) authorizing and approving the sale of substantially all of certain Debtors

---

[1] The Debtors, with associated case numbers, are as follows: (1) Medford Development Corp., 14-75666 (AST); (2) Motor Parkway Enterprises, Inc., 14-75667 (AST); (3) Airport Development Corp., 14-75683 (AST); (4) Wheeler Development LLC, 14-75668 (AST); (5) Smithtown Development Corp., 14-75669 (AST); (6) Brentwood Development Corp., 14-75670 (AST); (7) Holbrook Development Corp., 14-75671 (AST); (8) Carman Development Corp., 14-75672 (AST); (9) Maple Avenue Hauppauge Dev. Corp., 14-75674 (AST); (10) Port Jefferson Development Corp., 14-75675 (AST); (11) Ronkonkoma Development Corp., 14-75676 (AST); (12) Islandia Development Corp., 14-75676 (AST); (13) Oceanside Enterprises Corp., 14-75678 (AST); (14) Islip Development Corp., 14-75679 (AST); and (15) Westbury Enterprises Inc., 14-75680 (AST).

assets, including of sale procedures and assignment procedures, subject to higher and better offers; (ii) authorizing the Debtors to assume and assign certain executory contracts and unexpired leases; and (iii) extending the Debtors' time to assume or reject executory contracts and unexpired leases; and a hearing having been held on the Motion before the Honorable Alan S. Trust, United States Bankruptcy Judge, Eastern District of New York, at the Courthouse located at 290 Federal Plaza, Central Islip, New York, Room 960; and this Court having jurisdiction over the Motion; and it appearing that sufficient cause exists to grant the Motion; and it appearing that notice of the Motion was proper, and no further notice was necessary nor required; and no objections having been heard; and good and sufficient cause having been shown; it is hereby:

ORDERED, that the Motion is granted; and it is further

ORDERED, that the Debtors are authorized to sell substantially all of the assets of the following Debtors: (1) Medford Development Corp.; (2) Oceanside Development Corp.; (3) Islip Development Corp.; (4) Islandia Development Corp.; (5) Smithtown Development Corp; (6) Westbury Enterprises, Inc.; (7) Ronkonkoma Development Corp; (8) Brentwood Development Corp.; and (9) Airport Development Corp.; and (10) Wheeler Development LLC; at a public auction sale, to the highest and best offer; and it is further

ORDERED, that the public auction sale will be held at the United States Bankruptcy Court, Eastern District of New York, located at 290 Federal Plaza, Central Islip, New York, Room 960, on March 18, 2015 at 12:00 p.m.

ORDERED, that the Sale Procedures, as amended, annexed hereto as Exhibit A, are approved; and it is further

2

**ORDERED,** the Assignment Procedures, as amended, annexed hereto as **Exhibit B**, are hereby approved; and it is further

**ORDERED,** that the Debtors time to assume or assign unexpired leases of nonresidential real property is hereby extended until July 22, 2015; and it is further

**ORDERED,** that the hearing approving the sale shall be heard before the Honorable Alan S. Trust, United States Bankruptcy Judge, Eastern District of New York, at the Courthouse located at 290 Federal Plaza, Central Islip, New York, Room 960, on _____, 2015, at _____, or as soon thereafter as counsel can be heard; and it is further

**ORDERED,** that the hearing approving the sale shall be on further notice as directed by the Court; and it is further

~~**ORDERED,** that the Debtors be, and hereby are, authorized and directed to expend such funds necessary to effectuate the terms and conditions of this order.~~

**SO ORDERED:**

3

# EXHIBIT A

## SALES PROCEDURES

### Bid Deadline

1.      If the Debtors receive one or more Qualified Bids (as defined below) for one or
more of the Debtors' Assets, an auction (the "Auction") shall be conducted as set forth below.  In
order to bid at the Auction, a Qualified Bidder (defined below) must submit a written bid in the
form of the Required Bid Documents (as defined below) for any of the Debtors' Assets no later
than **March 13, 2015 at 5:00 p.m.** (the "Bid Deadline").  The original Required Bid Document
must be submitted (as set forth below)) to (1) proposed counsel to the Debtors; Macco & Stern,
LLP, 135 Pinelawn Road, Suite 120 South, Melville, NY 11747, Attn: Michael J. Macco, Esq.,
(b) counsel for NYCB, Cullen & Dykman, LLP, 100 Quentin Roosevelt Boulevard, Garden City,
NY 11530, Attn: Matthew Roseman, Esq.; (c) counsel to Gulf, McCusker, Anselmi, Rosen, &
Carvelli, P.C., 210 Park Avenue, Suite 301, Florham Park, NJ 07932, Attn: Bruce S. Rosen,
Esq.; and (ed) the Office of the United States Trustee, 560 Federal Plaza, Central Islip, NY
11722.

2.      Each Qualified Bidder shall be deemed to acknowledge: (a) that it had an
opportunity to review pertinent documents with respect to the Debtors' Assets prior to making its
offer and that such Qualified Bidder relied solely on that review and upon its own investigation
of the Debtors' Assets in making its offer; and (b) that Qualified Bidder is not relying upon any
written or oral statements, representations or warranties of the Debtor, its agents, or its
representatives.

### Reservation of Rights

3.      The Debtors, in consultation with NYCB, reserves all rights to reject any and all
bids for the Debtors' Assets which they do not deem a Qualified Bid (defined below).

1

4.    The Debtors, in consultation with NYCB, shall have the right to modify these Sale Procedures and/or adopt such other rules for the bidding process which will better promote the goals of the bidding process, and which are not inconsistent with any of the other provisions hereof, the Debtors' rights and obligations as debtors-in-possession under the Bankruptcy Code, or of any Court order.

**Required Bid Documents**

5.    All bids must include the following documents (the "Required Bid Documents"):

(a)    A written offer, on Qualified Bidder's corporate letterhead, or, if on behalf of Qualified Bidder by Qualified Bidder's legal counsel, then on Qualified Bidder's legal counsel's letterhead, for the purchase of the Debtors' Assets for cash only, for the sum of not less than those listed on the Sales Contract for the relevant Debtor. Such written offer for Debtors' Assets must expressly state that the Qualified Bidder's offer is irrevocable until the earlier to occur of (i) the Closing (as defined herein) or (ii) thirty (30) days following the entry of an Order approving the sale of the Debtors' Assets to the Successful Bidder and/or Backup Bidder;

(b)    A certified or cashier's check for the Deposit (as defined herein);

(c)    an executed agreement of sale, substantially and materially in the form as the Agreement, a copy of which may be obtained from proposed counsel for the Debtors, Macco & Stern, LLP; and

(d)    documentary evidence of the Qualified Bidder's financial ability to consummate the sale and provide adequate assurances to Gulf, including without limitation, financial statements, bank statements, commitment from a reputable financial institution, evidence of outstanding credit lines or otherwise, and such documents shall be provided to Gulf under confidentiality upon receipt of reciprocal confidentiality from Gulf.

6.    All bids shall remain open and irrevocable until the earlier to occur of: (i) the Closing (as defined herein); or (ii) thirty (30) days following the entry of an Order approving the sale of the Debtors' Assets to the Successful Bidder and/or Backup Bidder.

**Qualified Bids**

7.      Unless such requirement is waived by the Debtors, only Qualified Bidders who have submitted qualified bids ("Qualified Bids") shall be eligible to participate in the Auction. In order to be a Qualified Bid, a bid shall:

(a)      include each of the Required Bid Documents;

(b)      be a bona fide, good faith offer to purchase the Debtors' Assets in an amount of not less than that listed on the Sales Contract for the relevant Debtor;

(c)      not be contingent on any subsequent event, including, but not limited to, conducting due diligence or obtaining financing;

(d)      demonstrate Qualified Bidder's financial ability to consummate the sale, and pay the balance of the Purchase Price in full at Closing with immediate available funds consisting of cash, wire transfer, cashier's check or certified check; and

(e)      be received by the Bid Deadline. Qualified Bidders are cautioned that bids must be delivered to proposed counsel for the Debtor by overnight courier or hand delivery only, so as to be received by the Bid Deadline.

**Deposit Requirement**

8.      Each Qualified Bidder shall tender a deposit in the amount of ten percent (10%) of such bid, with the next higher bid purchase the Debtors' Assets to be not less than $25,000 over the price contained in the Sales Contract for the relevant Debtors (each, a "Deposit"). A Qualified Bidder who wishes to bid on multiple Debtors' Assets must make multiple Deposits accordingly. The Debtors' proposed counsel shall hold in escrow (without interest), the Deposit of the first highest and/or best Qualified Bidder (the "Successful Bidder") and the Deposit of the second highest and/or best Qualified Bidder (the "Backup Bidder"), until the earlier to occur of (i) the Closing, or (ii) thirty (30) days following the entry of an Order approving the sale of the Debtors' Assets to the Successful Bidder and/or Backup Bidder.

3

9.    The Debtors shall return the Deposits of all other Qualified Bidders within ten (10) business days of the Auction.

10.    In the event the Debtor does not consummate a sale of the Debtors' Assets for any reason (other than the Qualified Bidder's failure to consummate the sale), the Debtors' sole obligations and liabilities shall be to refund the Deposit to the Qualified Bidder with respect to such Debtor's Assets.

11.    None of the Debtors' Assets shall be deemed sold pursuant to the procedures described herein unless (a) the Court has approved such sale at a hearing, and (b) such propose transaction is in fact consummated.

### The Auction

12.    The Auction shall on **March 18, 2015 at 12:00 p.m.** at the United States Bankruptcy Court, Eastern District of New York, located at 290 Federal Plaza, Central Islip, New York, Room 960, on the terms and conditions set forth in these Sale Procedures. The Debtors reserve the right to change the change the date, time and location of the Auction upon notice to all interested parties. Only Qualified Bids will be considered at the Auction. ALL SALES WHETHER AT THE AUCTION OR A PRIVATE SALE, SHALL BE SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT.

13.    The terms and procedures governing the Auction are as follows:

    (a)    In the event the Debtors receives only a single Qualified Bid for each of the Debtors' Assets, such Debtors' Assets will not be subject to bidding at the Auction, and the Debtor may sell such Debtors' Assets to the Proposed Purchaser in compliance with the Bankruptcy Code.

    (b)    A minimum Qualified Bid amount for the Debtors' Assets may be announced and/or posted prior to the Auction. Such minimum Qualified Bid amount shall be for a purchase price of not less than $25,000 more than the price contained in the Sales Contract for the

[Formatted: Space After:  1 line]

4

relevant Debtor.  All bidding shall be in increments of $10,000.00, or such other amount as the Debtor determines in its discretion.

(c)    The Debtor intends to sell at the Auction the Debtors' Assets, which shall include all property as set forth in the Agreement.

(d)    The Debtor intends to sell the Debtors' Assets to the Qualified Bidder making the highest or otherwise best Qualified Bid at the Auction.  Formal acceptance of a bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the sale of Debtors' Assets to such Qualifed Bidder.

(e)    At the conclusion of the Auction, the Debtor will announce which Qualified Bid is the highest or otherwise best Qualified Bid (the "Successful Bidder"), and which bid is the second highest and/or best bid (the "Backup Bid"), if any, for each of the Debtors' Assets.  The Successful Bidder shall supplement its Deposit within one business day so that, to the extent necessary, such Deposit equals ten percent (10%) of the highest and/or best Qualified Bid.

(f)    The Debtor reserve the right to (i) determine which Qualified Bid, if any, for the Debtors' Assets is the highest or otherwise best Qualified Bid and (ii) reject, at any time prior to entry of an order of the Bankruptcy Court approving a Qualified Bid, any offer which the Debtor, in its sole discretion, deems to be (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules, or the terms and conditions of sale set forth herein, or (iii) contrary to the best interests of the Debtors, their estates creditors.   Except with regard to the Proposed Purchasers as set forth in the Sales Contracts, the Debtor will have no obligation to accept or submit for Court approval any offer presented at the Auction.  It is expressly stated that a Successful and/or Backup Bid may or may not yield sufficient proceeds to satisfy liens in this case.

**Sale Approval**

14.    The sale of the Debtors' Assets to the Successful Bidder and/or Backup Bidder will be approved by Order of the Court.  No Qualified Bid shall be deemed accepted until Court Order approving the sale to the Successful Bidder and/or Backup Bidder has been entered.

15.     The Debtors shall have no obligation to accept or submit for Court approval any Qualified Bid as to the Proposed Purchasers set forth in the Sales Contracts.

**The Closing**

16.     The closing (the "Closing") of the sale of the Debtors' Assets shall take place in the offices of the Debtors' proposed counsel within ten (10) days following the entry of an order by the Court confirming the sale.  With respect to the Closing, time of performance by the Successful Bidder is of the essence.  Upon failure to consummate the sale of the Debtors' Assets because of a breach or failure on the part of the Successful Bidder(s) with respect to such Debtor's Assets, the Debtor shall retain the Deposit as liquidated damages, and the Backup Bidder, as disclosed at the Auction with respect to such Debtor's Assets, shall be deemed the Successful Bidder and shall promptly consummate the sale of the Debtor's Assets without the need for further Order of the Court.

17.     The balance of the purchase price shall be paid by the Successful Bidder by wire transfer or cashier's or certified check at the Closing.

17.     At Closing, any adjustments related to for utilities shall be apportioned as set for in the Agreement.  Cash and funds, if any, in Debtors' bank accounts (or monies owed to the Debtor, including any accounts receivable) at the time of the Closing are not part of the sale, and shall be distributed in accordance with the Bankruptcy Code.

**Disclaimer**

18.     Any sale, assignment, or other disposition of the Debtors' Assets shall be without representations or warranties of any kind, nature, or description by the Debtor, its agents, or representatives. The Debtors' Assets shall be transferred "as is" and "where is" as set forth in the Agreement.

19.     Any and all information and/or documentation provided by the Debtor or its agent to prospective Qualified Bidders:

(a)     has been prepared for informational purposes only;

(b)     has been prepared from materials supplied by the Debtors; and

(c)     is being furnished through the Debtor sand its professionals solely for use by prospective Qualified Bidders in considering their interest in acquiring the Debtors' Assets.

20.     By accepting documents and data from the Debtors and/or their professionals, the recipient acknowledges and agrees that: the information provided by the Debtors and/or their professionals has been prepared to assist interested parties in making their own evaluation of the Debtors' Assets and does not purport to be all-inclusive or to contain all of the information that a prospective buyer may desire.   In all cases, interested parties should conduct their own investigation and analysis of the Debtors' Assets, conduct site inspections and scrutinize the information.   The Debtors and their professionals have assumed no responsibility for independent verification of any of the information contained herein and has not in fact in any way audited such information. The Debtors, their professionals, and/or other advisors and any or all respective affiliates and representatives are not making nor will they make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise, with respect to the Debtors' Assets and with respect to the accuracy, reliability or completeness of the information, except as expressly stated in any documents filed with the Court and stating as such.   The Debtors and their professionals expressly disclaim any and all liability based on or relating or pertaining to any written or oral statements, financial information, projections, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise.   Additionally, in the sole discretion of the Debtors, a Qualified Bidder, if not

7

previously executed, to enter a nondisclosure agreement in form and substance acceptable to the Debtors.

**Miscellaneous Terms of Sale**

21.    Subject to further Order of the Court, the Debtor intends to sell all of the Debtor's rights, title, and interest in and to the Debtors' Assets, free and clear of all Liens, with all Liens to attach to the net proceeds, if any, received by the Debtors as a result of the sale with the same priority, validity, force and effect as they currently exist.

22.    All sales, transfer, and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of the Debtor's Assets, shall, as set forth in the Sales Contracts, be the sole responsibility of the Successful Bidder and shall be paid at the Closing of such transaction.  Such payment shall be in addition to the purchase price.  Depending upon the circumstances of the Debtor's case, if applicable, to the extent such transfer or similar taxes may be exempt from application pursuant to the provisions of the Bankruptcy Code with respect to transfers made pursuant to and in connection with a plan of reorganization, the Debtors may seek Court approval of such a provision.  However, unless a final non-appealable Order of the Court has been entered confirming a plan of reorganization or liquidation herein, then the tax obligations, if any, set forth in this provision same shall remain the obligation of the Successful Bidder and shall be paid by the Successful Bidder at Closing.

23.    The Debtors, at or before the Auction, in their sole discretion, may impose or modify the terms and conditions herein as it determines to be in the best interests of the Debtors, their estates, creditors, and other parties in interest.

8

24.    To the extent there is any inconsistency between and/or among the Sale Procedures and the Sale Procedures Order, the terms and conditions set forth in these Sale Procedures shall control.

25.    Any and all disputes related to the Sale Procedures, the Auction, and the sale of the Debtors' Assets, shall be adjudicated solely by the United States Bankruptcy Court for the Eastern District of New York.  The submission of a Qualified Bid by a Qualified Bidder shall constitute such Qualified Bidder's express consent to the exclusive jurisdiction of the Bankruptcy Court for all matters related to the foregoing.

# EXHIBIT B

<u>**ASSIGNMENT PROCEDURES**</u>

1.      To facilitate and effectuate the sale of the Assets, the Debtors also seek to assume and assign the Contracted Agreements to the Proposed Purchasers (or a successful Qualified Bidder). As such, the Debtor further seeks authority to establish a process (the "Assignment Procedures") to: (i) determine the amount of any cure obligations, if any, such that the Contracted Agreements may be assumed by Debtors and assigned to the Proposed Purchaser (or successful Qualified Bidder); and (ii) establish objection procedures for the counterparties to the Contracted Agreements. The proposed Assignment Procedures are as follows:

    (a)    Within five (5) days after entry of the order approving the Sales Procedures, the Debtors will file an assignment schedule (the "Assignment Schedule") with the Court and serve such Assignment Schedule by ~~first class mail~~<u>overnight mail</u> on the non-Debtor counterparties to those Agreements;

    (b)    The Assignment Schedule will include: (i) the title of the Agreement to be assumed; (ii) the name of the counterparty to the Agreement; (iii) any applicable cure amounts; (iv) the identity of the assignee; and (v) the deadline by which any such Agreement counterparty must object;

    (c)    Any objections to the assumption and/or assignment of any Agreement identified in the Assignment Schedule, including to the cure amount set forth on such schedule, must be in writing, filed with the Court, and be actually received by counsel to the Debtors <u>and counsel to NYCB,</u> no later than ten (10) days after the Assignment Schedules is mailed to the affected party (the "Assignment and Cure Objection Deadline");

    (d)    If no objections are received by the Assignment and Cure Objection Deadline, then the assumption and assignment are authorized and the cure amounts set forth in the Assignment Schedule shall be binding upon the non-debtor party to the Agreement for all purposes and will constitute a final determination of total cure amounts required to be paid by the Debtor in connection with the assignment to the successful Qualified Bidder;

    (e)    If no objections are received by the Assignment and Cure Objection Deadline, each non-Debtor party to the Agreement shall

1

be barred from objecting to the cure information set forth in the Assignment Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to the Agreements arising or relating to any period prior to such assumption or assignment;

(f)     If no objections are received by the Assignment and Cure Objection Deadline, counsel to the Debtors may submit to the Court a certificate of no objection and for of order (collectively, the Certificate of No Objection") granting the requested assumption and/or assignment of the Agreement, and serve such Certificate of No Objection on the counterparty to the Contract, which shall permit the Court to enter an order approving the assumption and/or assignment within twenty-four (24) hours after such filing;

(g)     If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing, if the Assignment Schedule is served at least five (5) days prior to thereto, or any later date set by the Court;

(h)     The pendency of a dispute relating to cure amounts will not prevent or delay the assumption and/or assignment of the Agreement; and

(i)     If an objection is filed only with respect to the cure amount listed on the Assignment Schedule, the Debtors may file a Certificate of No Objection as to assumption and assignment only and the despite with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable, before the Court, but the Debtors intend to cooperate with counterparties to the Agreement to reconcile any difference in a particular amount.

2.     In light of the foregoing, the Debtors respectfully request that the Court enter an order: (i) authorizing and approving the sale of substantially all of certain Debtors assets, including of sale procedures and assignment procedures, subject to higher and better offers; (ii) authorizing the Debtors to assume and assign certain executory contracts and unexpired leases; and (iii) extending the Debtors' time to assume or reject executory contracts and unexpired leases.

2