Peter A. Lauricella
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
677 Broadway
Albany, New York 12207
Phone: (518) 449-8893
Fax: (518) 465-2548

*Counsel for Core-Mark-Midcontinent, Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In Re:

MEDFORD DEVELOPMENT CORP.,

Debtor.

Chapter 11

Case No.: 8-14-75666-ast

---

**OBJECTION OF CORE-MARK MIDCONTINENT, INC. TO THE MOVING DEBTORS'[1] MOTION TO SELL DEBTOR'S BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND RESPONSE TO OBJECTION**

Core-Mark Mid-Continent, Inc. ("Core-Mark"), by and through its undersigned counsel, hereby respectfully submits this objection to the Moving Debtors' Motion seeking to approve the sale of the Debtor's business assets free and clear of liens, claims, encumbrances, and interests pursuant to 11 U.S.C. §363 (Docket No. 47)(the "Motion").

**GENERAL BACKGROUND**

1.   Core-Mark is a business corporation organized and existing under the laws of the State of Arkansas, with a place of business at 100 West End Road, Wilkes-Barre, Pennsylvania 18703, and is authorized to do business in the State of New York.

---

[1] The Moving Debtors with associated case numbers, are as follows: (1) Medford Development Corp., 8-14-75666 (AST), (2) Oceanside Enterprises, Inc., 8-14-75678 (AST); (3) Islip Development Corp., 8-14-75679 (AST); (4) Islandia Development Corp., 8-14-75677 (AST); (5) Smithtown Development Corp., 8-14-75669 (AST); (6) Westbury Enterprises, Inc., 8-14-75680 (AST); (7) Ronkonkoma Development Corp., 8-14-75676 (AST); (8) Brentwood Development Corp., 8-14-75670 (AST); (9) Airport Development Corp., 8-14-75683 (AST); and (10) Wheeler Development, LLC, 8-14-75668 (AST) (hereinafter collectively the "Moving Debtors").

1

1115503v.1

2. Core-Mark is an authorized dealer and wholesaler of tobacco products and candy, confections, snacks, toiletries, and other "convenience-store" type products (hereinafter collectively referred to as the "Products"). Core-Mark regularly engages in the sale and distribution of Products to gas stations, convenience stores, and similar businesses in New York, among other places.

3. At all relevant times, the Moving Debtors owned and operated gas stations/convenience stores within New York.

4. The Moving Debtors were customers of Core-Mark, ordering and purchasing Products from approximately September 2012 through August 2014.

5. The Moving Debtors' relationship with Core-Mark was governed by certain written Credit Agreements, as well as Security Agreements (hereinafter, the "Credit Agreements"). The Credit Agreements set forth terms by which the Moving Debtors could purchase Products from Core-Mark on credit.

6. Under the terms of the Credit Agreements, and as security and consideration for the credit extended thereunder by Core-Mark, the Moving Debtors agreed to grant Core-Mark a security interest in all of the Debtors' present and future personal property, including, without limitation, inventory, equipment and accounts receivables. (Copies of the Security Agreements are annexed hereto as Exhibit "A"). Through counsel, Core-Mark duly filed UCC-1 financing statements with the New York State Department of State for the Moving Debtors. (Copies of the UCC-1s are annexed hereto as Exhibit "B").

7. Among other things, the Credit Agreements required the Debtor to make prompt payment to Core-Mark, after being invoiced for Products ordered and delivered.

8. As of the date of the petition, the Moving Debtors' accounts with Core-Mark, representing Products delivered and invoiced to the Moving Debtors, were collectively

2

1115503v.1

delinquent in the amount of Three Hundred Forty Five Thousand Eight Hundred Thirty Three and 54/100 ($345,833.54) Dollars, not including service charges (interest) and reasonable attorneys' fees and collection costs.

### THE DEBTORS' BANKRUPTCY

9. On December 24, 2014 the Moving Debtors filed Petitions with this Court, seeking protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code")(Docket No. 1).

10. Later that same day, the Court posted an entry to the Docket, informing the Moving Debtors that their Chapter 11 filing was deficient because certain documents were missing, including: Corporate Disclosure Statement, Schedules and Summary of Schedules, and Statement of Financial Affairs (Docket No. 4 and 15).

11. The Moving Debtors' cases were ultimately consolidated along with five other related Debtors.

12. A meeting of creditors has yet to be held, and there are numerous motions pending before this Court including a motion to convert the Moving Debtors and other related Debtors' cases from a Chapter 11 to a Chapter 7.

### THE PROPOSED SALE & CORE-MARK'S OBJECTIONS

13. As set forth above, Core-Mark is a secured creditor of the Moving Debtors, having perfected security interests in the Debtors' collateral and accounts receivables. As such, Core-Mark has concerns with the proposed sale and the notice to be provided by the Moving Debtors to the Creditors in this case.

14. Core-Mark shares the concerns raised by United States Trustee in his Limited Objections to the Moving Debtors' Motion (Docket No. 61).

15. Core-Mark also shares many of the concerns raised by other creditors in their papers regarding the conduct of the Debtors prior to the Bankruptcy filings, especially the references about the Debtors bouncing and stopping payments on checks, which the Debtors did to Core-Mark as well, to the tune of well over $100,000.00, on top of all the other money they owe.

16. To date, the Moving Debtors' have failed to disclose any financial information, but it appears the Motion will sell any assets of value and will impact the recovery available to certain Secured Creditors, including Core-Mark, if adequate marketing and restrictions are not put in place.

17. The Moving Debtors have not provided ample time for the Creditors to digest the pending motions and relief sought, including the conversion to a Chapter 7 case. Core-Mark respectfully requests that the Court deny the Motion and require the Moving Debtors to propose bidding guidelines that will ensure the highest possible bids are received and approved for the assets to be sold.

18. As the Trustee aptly notes in his objections, the Moving Debtors themselves concede that "[s]ince the Petition Date, Debtors have received various other offers to purchase substantially all of the Debtors' assets at prices higher than the Sales Contracts" (Docket No. 47, ¶52). This raises concerns and calls into question the effectiveness of the proposed bidding guidelines. Core-Mark urges the Court to reject the guidelines and the Motion to ensure the highest possible value for the assets is recouped so that all secured creditors may share in the proceeds and have their debts satisfied.

19. While Core-Mark is not opposed in general to any procedure that would maximize the value of the assets to be distributed, Core-Mark, like all Creditors, is entitled to transparency and notice of the Moving Debtors actions and assets. As a secured party, Core-

Mark should be afforded adequate notice of any proposed sales and the current proposed Order only provides notice to the Debtors' Bank, Cumberland Farms and the Trustee.

20. Core-Mark further objects in so far as it is not listed or referred to as a secured creditor in the Motion.

21. As set forth in the Motion, the Moving Debtors intend to sell all the assets free and clear of liens, but with these liens "to attach to the net proceeds, if any received by the Debtors as a result of the sale with the same priority, validity, force and effect as they currently exist (Docket No. 47, ¶39).

22. Only a few moments ago, the Moving Debtors filed a proposed Order for the Motion (Docket No. 58) (hereinafter the "Proposed Order"). This Proposed Order does not reflect any notice provision to Core-Mark nor does it address Core-Mark's or the Trustee's concerns that the bidding guidelines are not drafted in a way to ensure that the highest possible value for the assets is received.

23. As a secured party, Core-Mark should be afforded notice.

## CONCLUSION

24. For the foregoing reasons, the Debtor's Motion for authorization to sell all or substantially all of its assets pursuant to 11 U.S.C. §363(b) (Docket No. 47) should be denied or in the alternative the sale should be subject to the attachment of Core-Mark's liens to any and all proceeds of the sale.

Dated: January 22, 2015

*s/Peter Lauricella*
PETER A. LAURICELLA, ESQ
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
*Attorneys for Core-Mark Midcontinent, Inc.*
677 Broadway
Albany, New York 12207
(518) 449-8893
peter.lauricella@wilsonelser.com

1115503v.1